# NEW ORLEANS PACIFIC RAILWAY COMPANY *v.* UNITED STATES.

### APPEAL FROM THE COURT OF CLAIMS.

Submitted January 6, 1888. — Decided January 16, 1888.

Under the provision of the act of July 31, 1876, c. 246, 19 Stat. 121, " that before any land granted to any railroad company by the United States shall be conveyed to such company, or any person entitled thereto under any of the acts incorporating or relating to such company, unless such company is exempted by law from the payment of such cost, there shall first be paid into the Treasury of the United States, the cost of surveying, selecting and conveying the same by the said company or persons in interest," the New Orleans Pacific Railway Company, as the owner, by conveyance from the New Orleans, Baton Rouge and Vicksburg Railroad Company, of its interest in the land grant made to the latter company by § 22 of the act of March 3, 1871, c. 122, 16 Stat. 579, was bound to pay the cost of surveying the land, before receiving a patent for it, although such cost had been incurred and expended by the United States before March 3, 1871, the construction of no part of the road having been commenced before the expiration of the five years limited for the completion of the whole of it.

APPEAL from a judgment against the petitioner in the Court of Claims. The case is stated in the opinion of the court.

*Mr. John S. Blair, Mr. John F. Dillon* and *Mr. Wager Swayne*, for appellant.

*Mr. Attorney General* and *Mr. Assistant Attorney General Howard,* for, appellee.

MR. JUSTICE BLATCHFORD delivered the opinion of the court.

This is an appeal by the New Orleans Pacific Railway Company from a judgment of the Court of Claims dismissing its petition, on a demurrer thereto, after it had failed to amend the petition in accordance with leave granted to it by the court.

The substantial allegations of the petition are these: The petitioner is a corporation of Louisiana. The New Orleans, Baton Rouge and Vicksburg Railroad Company was incorporated by Louisiana in 1869. By § 22 of an act of Congress passed March 3, 1871, c. 122, 16 Stat. 579, there were granted to the New Orleans, Baton Rouge and Vicksburg Railroad company, its successors and assigns, in aid of the construction of its railroad from New Orleans to Baton Rouge, thence by the way of Alexandria, in the State of Louisiana, to connect with the Texas Pacific Railroad Company at its eastern terminus, the same number of alternate sections of public lands per mile, in the State of Louisiana, as were, by the same act, granted in the State of California to the Texas Pacific Railroad Company; and it was provided that said lands should be withdrawn from market, selected, and patents issued therefor, and opened for settlement and preëmption, upon the same terms and in the same manner and time as was provided for and required from the Texas Pacific Railroad Company within the State of California: "*Provided,* That said company shall complete the whole of said road within five years from the passage of this act."

By § 9 of the same act, there was granted to the Texas Pacific Railroad Company, its successors and assigns, every alternate section of public land, not mineral, designated by odd numbers, to the amount of ten alternate sections of land per mile on each side of said railroad in California.

Section 12 of the same act provided as follows: "That whenever the said company" (the Texas Pacific Railroad

Company) "shall complete the first and each succeeding section of twenty consecutive miles of said railroad and put it in running order as a first-class road in all its appointments, it shall be the duty of the Secretary of the Interior to cause patents to be issued conveying to said company the number of sections of land opposite to and coterminous with said completed road to which it shall be entitled for each section so completed. Said company, within two years after the passage of this act, shall designate the general route of its said road, as near as in y be, and shall file a map of the same in the Department of the Interior; and, when the map is so filed, the Secretary of the Interior, immediately thereafter, shall cause the lands within forty miles on each side of said designated route within the Territories, and twenty miles within the State of California, to be withdrawn from preëmption, private entry, and sale."

On the 11th of November, 1871, the New Orleans, Baton Rouge and Vicksburg Company filed in the Department of the Interior a map of the general route of its road from Baton Rouge to Shreveport, and, on the 13th of February, 1873, a like map showing the general route of its road from New Orleans to Baton Rouge. In 1871 and 1873, the lands along said general route, within the grant of the act of March 3, 1871, were withdrawn from entry and sale by order of said Department. On the 5th of January, 1881, the petitioner became the owner, by conveyance from the New Orleans, Baton Rouge and Vicksburg Company, of all its interest in such grant of public lands; and the conveyance and its acceptance by the petitioner were duly recognized by the Department of the Interior. After January 5, 1881, the petitioner constructed two hundred and sixty miles of the railroad from Shreveport, by way of Alexandria and West Baton Rouge, to White Castle, in Louisiana, within the limits of the lands withdrawn for its grantor, and substantially upon the course, direction, and general route of the road filed by such grantor.

On the 13th of March, 1883, the Secretary of the Interior transmitted to the President of the United States a report in writing of the commissioner appointed by the President to ex-

amine said two hundred and sixty miles, and recommended that they be accepted, and that patents for such lands as might have been earned by their construction be issued to the petitioner. This recommendation was approved in writing by the President, and on the 3d of March, 1885, patents were issued to the petitioner for 679,284.64 acres of lands in Louisiana, as earned by the petitioner. Before issuing the patents, the Secretary of the Interior exacted from it $14,713.63, alleging the same to be due for the cost of surveying the lands, although such cost had been incurred and expended by the United States prior to March 3, 1871. The petitioner denied the right of the United States to that sum, and paid it under protest. The petitioner prayed judgment for that sum.

The question in the case is as to the effect of a statutory provision enacted July 31, 1876, c. 246, 19 Stat. 121, in "An act making appropriations for sundry civil expenses of the Government for the fiscal year ending June thirtieth, eighteen hundred and seventy-seven, and for other purposes," in these words: "*And provided further;* That before any land granted to any railroad company by the United States shall be conveyed to such company, or any person entitled thereto under any of the acts incorporating or relating to said company, unless such company is exempted by law from the payment of such cost, there shall first be paid into the Treasury of the United States the cost of surveying, selecting, and conveying the same by the said company or persons in interest."

We are of opinion that this provision of the act of 1876 controls the present case, and is conclusive against the right of the petitioner to recover the money in question. At the time this act was passed, neither the petitioner nor its grantor had acquired any right to claim the lands granted. The five years from March 3, 1871, within which, as a condition, the whole of the road was to be completed, had elapsed without the commencement of any part of the work of construction. That was not begun until nearly ten years after the act of March 3, 1871, was passed. The petitioner accepted the conveyance from its grantor with full knowledge of the provision of the act of 1876. Congress had a right at that time to im-

pose upon the grant the new condition, the company having failed to complete the whole of the road by March 3, 1876.

The restriction in the act of 1876, that the provision for the payment of the cost of surveying the land shall not apply to a company which is "exempted by law from the payment of such cost," does not apply to the case of the petitioner. There is no express statutory provision exempting the grantor to the petitioner from the payment of the cost of surveying the land. All that can be said is, that the act of March 3, 1871, was silent on the subject. It neither exempted the beneficiary from paying the cost of surveying, nor did it expressly require it to pay such cost. It and its grantee, therefore, fall within the provision of the act of 1876, because not within the exception contained in that provision.

It is urged for the appellant, that, in the present case, the surveys had been made and paid for by the United States prior to the passage of the act of March 3, 1871, and that, as § 12 of that act provided for the issuing of patents without requiring the payment of the cost of surveying, the company was therefore "exempted by law from the payment of such cost," within the meaning of the provision of the act of 1876; and it is suggested, that no statute in respect to the granting of public lands to either a State or a railroad company, passed prior to 1876, contained a provision expressly exempting the grantee from the payment of the cost of surveying. It is further urged, that the terms of the provision of the act of 1876 are not intended to apply to then existing grants, but only to future grants and to the cost of surveys to be made thereafter.

But we are of opinion that the provision is a general one, and that, although it is enacted in connection with an appropriation of money for the survey of public lands and of private land claims, and follows a requirement that no patent shall issue for a private land claim until the cost of survey and platting shall have been paid into the Treasury by the party in interest, yet it is not controlled by those circumstances. It is manifestly general legislation, applying, as to the past, to all land theretofore " granted to any railroad company by the

United States," and to the cost of surveying such land, whether that cost had been previously incurred or expended, or was to be incurred or expended in the future. The exception created, that the provision is not to apply to a company exempted by law from the payment of the cost, is general in its language. If such a company is to be found, the exception applies to it; if it is not to be found, the provision applies to it.

It is urged for the appellant, that, inasmuch as § 17 of the act of March 3, 1871, provided, in regard to the Texas Pacific Railroad Company, that, upon the failure to complete its road within the time-limited by that act, Congress might adopt such measures as it might deem necessary and proper to secure the speedy completion of the road, and, inasmuch as that act contained no reservation of a power to add to, alter, amend, or repeal its provisions, Congress was restricted, on a failure of the New Orleans, Baton Rouge and Vicksburg Company to complete the whole of its road within five years from the passage of the act, to the adoption of measures for the securing of a speedy completion of the road, and that the imposition upon the company of the cost of surveying the land was not such a measure.

But we are of opinion, that while, on the failure of the company to complete its road within the time limited, Congress might adopt measures to secure its speedy completion, no limitation was imposed on the right and power of Congress, the company having failed even to commence the construction of any part of its road within the time limited, to virtually renew the grant and extend the time within which the land might be earned, with the imposition of a new condition, that, before any patent should be issued, the cost of surveying the land patented should first be paid into the treasury.

In the case of *Farnsworth* v. *Minnesota & Pacific Railroad Co.*, 92 U. S. 49, it was held by this court, that, where a grant of land and connected franchises is made to a corporation, for the construction of a railroad, by a statute which provides for their forfeiture upon failure to perform the work within the prescribed time, the forfeiture may be declared by legislative act, without judicial proceedings to ascertain and determine

the failure of the grantee; and that any public assertion by legislative act of the ownership of the State after the default of the grantee is equally effective and operative.   See, also, *McMicken* v. *United States*, 97 U. S. 204, 217, 218.

In the present case, it is true that the statute did not provide for the forfeiture of the grant on failure to complete the whole of the road within the five years; but, within the principle of the case referred to, Congress was left free, on a failure of the grantee to do any of the work within the five years, to impose the condition it did upon the grant of the lands.   As was said in *Farnsworth* v. *Minnesota & Pacific Railroad Co.*, the act having made the construction of the whole of the road within five years a condition precedent to a patent for any of the land granted, no conveyance in disregard of that condition could pass any title to the company, as was held in *Schulenberg* v. *Harriman*, 21 Wall. 44.   It follows that Congress had the power, after the lapse of the time during which the right to any conveyance could have been earned, to impose a condition upon which such right could be earned in the future.   The application by the petitioner for a conveyance or patent must be taken as an assent by it to the condition imposed by the act of 1876.

The same principle was applied in *United States* v. *Repentigny*, 5 Wall. 211.   In *Railway Co.* v. *Prescott*, 16 Wall. 603, it was held by this court, that the 21st section of the act of July 2, 1864, 13 Stat. 365, amendatory of the act of July 1, 1862, 12 Stat. 489, to aid the Kansas Pacific Railway in the construction of its road by the grant of lands, which amendatory section required the prepayment of the cost of surveying, selecting, and conveying the lands, required the prepayment as to lands granted by the original act, as well as to those granted by the amendatory act.   It was contended by counsel in that case, that, as the original act required no such prepayment, the United States could not, in disregard of the statute which made the grant, annex new conditions to it by a subsequent enactment.   But this court said (p. 608): "We are of opinion that no patent could rightfully issue in any case until the cost of survey had been paid.   None of the road had been

built when the amendatory act was passed. No right had vested in any tracts of land, and the power, as well as intent, of Congress to require such payment cannot be contested."

The same statutory provisions were under consideration in *Railway Co.* v. *McShane*, 22 Wall. 444. In that case, in reference to the provision of § 21 of the act of 1864, this court said (p. 462): "That the payment of these costs of surveying the land is a condition precedent to the right to receive the title from the Government, can admit of no doubt. Until this is done, the equitable title of the company is incomplete. There remains a payment to be made to perfect it. There is something to be done, without which the company is not entitled to a patent."

This view was affirmed in respect to like statutory provisions concerning the Northern Pacific Railroad Company, in the case of *Northern Pacific Railroad Co.* v. *Traill County*, 115 U. S. 600, where, by an act passed in 1870, Congress had provided that before any land granted to the company by the United States should be conveyed there should first be paid into the Treasury of the United States the cost of surveying, selecting, and conveying the same.

These views seem to us to be decisive in the present case, and,

*The judgment of the Court of Claims is affirmed.*