# SANTA FÉ PACIFIC RAILROAD COMPANY v. LANE.

---

PUBLIC LANDS; LAND GRANT RAILROADS; COST OF SURVEYING UNSURVEYED PUBLIC LANDS; SECRETARY OF THE INTERIOR; EQUITY; INJUNCTION.

1. Under the acts of Congress of July 31, 1876 (19 Stat. at L. 121, chap. 246, Comp. Stat. 1913, sec. 4882), June 25, 1910 (36 Stat. at L. 834, chap. 406, Comp. Stat. 1913, sec. 4914), requiring every railroad company to which there has been a grant of unsurveyed public lands to pay for the cost of surveying the land before any conveyance should be made of the lands by the United States to the company, unless the company is exempted by law from the payment of such costs, and to make deposit for such purpose with the Secretary of the Interior on estimate made by him of the cost of the survey,—the successor of a railroad incorporated under the act of July 27, 1866 (14 Stat. at L. 292, chap. 278), and which under that act became entitled to a grant of every alternate section of public land on each side of its line, may be required by the Secretary to make a deposit to cover the cost of such a survey, where its predecessor has not been expressly exempted by statute from paying the cost.

2. In requiring and fixing the amount of a deposit for a survey to be made by the successor of a land grant railroad to cover the cost of surveying alternate sections of unsurveyed land to which the company is entitled, as provided for by the act of Congress of June 25, 1910 (36 Stat. at L. 834, chap. 406, Comp. Stat. 1913, sec. 4914), the Secretary of the Interior acts within his jurisdiction if he follows a possible construction of the statute, and his action is not subject to judicial review, even if, as a result, the corners will be fixed of the government sections without cost to it, and although ·the railroad company will be required to pay the entire cost of the survey, and although the previous practice of the Department had been for the government to pay one half of the cost of such a survey. (Mr. Justice VAN ORSDEL dissenting.)

No. 2763. Submitted April 6, 1915. Decided April 26, 1915.

HEARING on an appeal by the plaintiff from a decree of the Supreme Court of the District of Columbia dismissing a bill in equity against the Secretary of the Interior to enjoin him from compelling the plaintiff to make a deposit for the cost of surveying unsurveyed public lands. *Affirmed.*

The COURT in the opinion stated the facts as follows:

This is an appeal from a decree in the supreme court of the District· dismissing appellant's bill to restrain the appellee, Franklin K. Lane, the Secretary of the Interior, from insisting upon his demand that the appellant, the Santa Fé Pacific Railroad Company, deposit $5,500, which the Secretary has determined will be required to pay the cost of the field and office work involved in surveying unsurveyed lands granted to the Atlantic & Pacific Railroad Company, within the primary limits of said grant in four townships, the appellant's contention being, first, that it is not liable to the payment of any part of the cost of such survey, and, second, that, if it is, the·Secretary's estimate is twice as great as it should be because the survey of these grants will incidentally result in the survey of the alternate sections belonging to the goverment.

By the act of July 27, 1866 (14 Stat. at L. 292, chap. 278),

provision was made for the incorporation of the Atlantic & Pacific Railroad Company, and by the 3d section of that act, for the purpose of aiding in the construction of the railroad, a grant was made to the company of every alternate section of public land not mineral, designated by odd numbers, to the amount of twenty alternate sections per mile on each side of the railroad line, etc. By sec. 4 it was provided that as fast as 25 consecutive miles should be reported completed by Commissioners appointed by the President, patents to the lands granted to the railroad should be issued, and so on as fast as every 25 miles should be completed. Section 6 provided that the President of the United States should cause the land to be surveyed for 40 miles in width on both sides of the entire line of said road, after the general route should be fixed, and as fast as might be required by the construction of the railroad.

The appellant was duly incorporated under the act of March 3, 1897 (29 Stat. at L. 622, chap. 374), and is the lawful successor of the Atlantic & Pacific Railroad Company.

The act of July 31, 1876 (19 Stat. at L. 121, chap. 246, Comp. Stat. 1913, sec. 4882), provides that "before any land granted to any railroad company by the United States shall be conveyed to such company, or any persons entitled thereto under any of the acts incorporating or relating to said company, unless such company is exempted by law from the payment of such cost, there shall first be paid into the Treasury of the United States the cost of surveying, selecting and conveying the same by the said company or persons in interest." The act of June 25, 1910 (36 Stat. at L. 834, chap. 406, Comp. Stat. 1913, sec. 4914), "to enable the Secretary of the Interior to complete the adjustment of land grants made by Congress to aid in the construction of railroads and to subject the lands granted to taxation by States, Territories and municipal authorities," provides that "any railroad corporation required by law to pay the costs of surveying, selecting, or conveying any lands granted to such company or corporation  *  *  *  is hereby required, within ninety days from demand by the Secretary of the Interior, to deposit in a proper United States de-

pository to the credit of the United States a sum sufficient to pay
the cost of surveying, selecting and conveying any of the unsur-
veyed lands granted to such company, or for its use and benefit,
under any act of Congress: Provided further, That the Sec-
retary of the Interior shall determine and specify in the notice
or demand to such company the amount of the required deposit,
and may, in his discretion, demand a sum sufficient to cover
the cost of the survey, selection and conveyance of the entire
area granted to any company, or for its use and benefit, then
unsurveyed, or for such townships or fractional townships as
he may prescribe and designate in the notice or demand to such
company, as aforesaid." It is further provided that in the
event the money deposited by any railroad corporation shall
exceed the costs of the survey, the excess shall be repaid to the
depositor; that in the event of the neglect or refusal to make the
the deposit as aforesaid, the rights of the offending party "shall
cease and forfeit to the United States; and the Secretary of
the Interior shall notify the Attorney General, who shall at
once commence proceedings to declare the forfeiture and to
restore the lands forfeited to the public domain."

On June 11, 1914, the aforesaid demand for the deposit of
$5,500 was made. Appellant protested that the amount demand-
ed should be reduced one half; that said act of June 25, 1910,
"indicated no purpose to increase the call upon the company so
as to embrace other than the lands granted to the company, but
merely authorized an estimate of this amount, the lands being
unsurveyed, in place of the known amount after survey, pro-
vided for in the act of 1876." The appellant did not "question
the right of the Secretary to estimate the amount required to
meet the cost of the survey of the company's lands in any given
township," but insisted that this estimate should "be made in
good faith to meet the demands of the grant, and no more."
The Secretary responded that "it was not the purpose of the
Department to require a deposit for the survey of any lands
except those granted to the company;" that "it is the judgment
of the Department that the public interest requires the im-
mediate survey of the railroad lands in those townships, and

that the public interest does not require the survey of the even-numbered sections in those townships;" that "under such circumstances, the Department is clearly of the opinion that the company was properly required to pay the cost of the field and office work involved in the survey of its granted lands, even though it be admitted that the cost to the company would be much less were it deemed proper at this time to direct the survey of all the lands within the townships named."

*Mr. Alexander Britton, Mr. Evans Browne, Mr. F. W. Clements,* and *Mr. A. A. Hoehling* for the appellant.

*Mr. Preston C. West* and *Mr. C. Edward Wright* for the appellee.

Mr. Justice Robb delivered the opinion of the Court:

It is apparent from the foregoing that until the filing of this suit appellant conceded that under said acts of July 31, 1876, and of June 25, 1910, it was liable to pay at least one half the cost of the survey of the lands in question. It now contends, however, that these acts have no application to these grants. Its rights being no greater than would have been the rights of its predecessor, the Atlantic & Pacific Railroad Company, the question is whether the provision of sec. 6 of the act of 1866, that the President should cause a survey to be made on each side of the line of said road, amounted to an exemption of the company from the payment of the costs of such survey within the meaning of said act of July 31, 1876 (19 Stat. at L. 121, chap. 246, Comp. Stat. 1913, sec. 4882). We think this question is determined by the decision of the Supreme Court in *New Orleans P. R. Co.* v. *United States,* 124 U. S. 125, 31 L. ed. 384, 8 Sup. Ct. Rep. 417. In that case the surveys had already been made and paid for by the United States prior to the passage of the granting act, which contained a provision that the Secretary of the Interior should cause patents to be issued to the land granted as fast as it should be earned. The

court ruled that, there being no express statutory provision exempting the railroad from the payment of the cost of surveying the land, the granting act being merely silent on the subject, the grant fell within the provisions of said act of 1876, "because not within the exemptions contained in that provision." So, here, there being no express statutory provision exempting appellant's predecessor from the payment of the costs of the survey, it fell within the provisions of the act of 1876. Of course, if the provisions of the act of 1876 are applicable to the appellant, so, also, are the provisions of said act of 1910.

A township, as is well known, is square in form, each outer line extending 6 miles, divided into thirty-six sections numbered from east to west in the upper tier, from west to east in the next lower tier, and so on, by which arrangement each alternate section has an odd number. In this case the odd-numbered sections belong to appellant, the even-numbered sections to the United States. Appellant does not contend that the cost of the survey and office work will be less than the amount demanded, but that, because the survey will necessarily fix the corners of the government's sections, the Secretary has exceeded his authority. The Secretary does not deny that for several years the practice has been for the government to pay one half the cost of such a survey. He insists, however, that, inasmuch as this land is all within a forest reserve, the public interests do not require a survey of the land remaining to the government.

Under said act of 1910 it is made the duty of the Secretary to determine the amount which, in his judgment, will be necessary to pay the cost of surveying, selecting, and conveying railroad lands. The act not only clothes him with jurisdiction to determine this question, but it imposes upon him the positive duty of making demand upon the particular company affected. In fixing the amount which the appellant should deposit in the present case, the Secretary was acting within his jurisdiction, and, unless his decision was arbitrary or capricious, we have no jurisdiction to review it, for it is not a queston "whether the decision of the Secretary was right or wrong, but whether

a decsion of that officer, made in the discharge of a duty imposed by law, and involving the exercise of judgment and discretion, may be reviewed by mandamus, and he be compelled to retract it, and to give effect to another not his own and not having his approval." *United States ex rel. Ness* v. *Fisher,* 223 U. S. 683, 56 L. ed. 610, 32 Sup. Ct. Rep. 356. Or, as was said in *United States ex rel. Riverside Oil Co.* v. *Hitchcock,* 190 U. S. 316, 47 L. ed. 1074, 23 Sup. Ct. Rep. 698. "Whether he [the Secretary of the Interior] decided right or wrong is not the question. Having jurisdiction to decide at all, he had necessarily jurisdiction, and it was his duty, to decide as he thought the law was, and the courts have no power whatever under those circumstances to review his determination by mandamus or injunction."

We think the Secretary's decision was based upon a possible construction of the act of 1910, and that therefore it was not arbitrary or capricious. *United States ex rel. Ness* v. *Fisher,* 223 U. S. 683, 691, 56 L. ed. 610, 612, 32 Sup. Ct. Rep. 356. The purpose and scope of his demand is to secure a deposit to defray the cost of surveying and segregating lands granted to appellant. In other words, for reasons which he deems sufficient, he has adopted a literal construction of the statute. Even if we were of the opinion that it would be more equitable for the government to contribute towards the cost of this survey, there would still be no sufficient foundation for a ruling that the Secretary's decision was arbitrary or capricious, since the statute is susceptible of the construction placed upon it by him.

The decree is affirmed with costs.          *Affirmed.*

Mr. Justice VAN ORSDEL dissenting:

I agree with my associates that the act of 1910 applies to defendant company, but I am unable to agree with the holding that the action of the Secretary in requiring the railroad company to pay the whole cost of the survey is not arbitrary and unwarranted under the law.

This is not an instance where the convenient and elastic rule of "possible construction" applies. A "possible construction" can mean no more than a reasonable construction. It cannot be construed to cover any arbitrary interpretation an official may choose to place upon a statute. If the official's construction is such as to confer arbitrary power in the face of the clear commands of the law, it cannot be that courts are estopped from granting extraordinary relief. In other words, the expression "possible construction" is certainly not susceptible of an interpretation which will result in an investment of arbitrary power.

The Secretary makes no contention that he is following the law. He admits that he is ignoring the construction heretofore followed by the Department; admits that under the subterfuge adopted the railroad company will be compelled to pay the cost of the entire survey; admits that he has no intention of returning any part of the deposit, except so much as is left after paying the entire cost of the survey; admits that the survey and platting of the railroad land *ipso facto* establishes the corners, and completely surveys and plats the intervening government sections, and admits that the proposed proceeding may be unauthorized; but attempts to justify his action on the excuse that he has decided that the government does not desire to survey its land at this time, but concedes in the same breath that in carrying out the proposed scheme the government will get a complete survey of its lands free of charge. With the completed survey of the railroad lands, the survey of the intervening lands will be equally complete. Hence, to assert in justification of the action here taken that the government does not desire to survey its lands, when admittedly the subterfuge here adopted indirectly accomplishes that end, amounts to an evasion of the express commands of the law.

If the threatened acts are unauthorized by the act of Congress (which seems to be conceded on all sides), the proceeding, in so far as holding up the railroad company for the full cost of the survey, is totally without legal authority, and as void as if no law existed on the subject. If a court of equity is

powerless to stay the hands of an official of the government from perpetrating through the proposed scheme this threatened injury, the guaranty of justice through the agency of the courts becomes a farce, and the citizen is left without protection from the arbitrary and capricious exactions of executive power.

An appeal to the Supreme Court of the United States was allowed May 4, 1915.