## MORRISON et al. v. FALL, Secretary of the Interior, et al.

(Court of Appeals of District of Columbia. Submitted February 15, 1923. Decided June 4, 1923.)

### No. 3875.

1. **Injunction** ⬦12—**Not issued to restrain Secretary of the Interior from doing acts which he has ceased to do.**

An Indian is not entitled to an injunction restraining the Secretary of the Interior from issuing patents covering lands ceded by the Indians to the state as swamp and overflowed lands, where it appeared that in 1913 the Secretary had ordered that no more patents issue for those lands, and none had issued since that time.

2. **Public lands** ⬦60—**Legality of patent of lands to state cannot be determined, where state is not a party.**

The legality of patents covering lands ceded by the Indians to the United States, which conveyed those lands to a state as swamp and overflowed lands, cannot be determined in a suit against United States officials, to which the state is not a party.

3. **Public lands** ⬦29—**Lands acquired from Indian tribe held public lands.**

Lands ceded to the United States by the Chippewa Indians under Act Jan. 14, 1889, to be disposed of as specified in that act, were public lands within the meaning of Act May 17, 1900, providing for homestead patents for agricultural public lands acquired prior to the passage of the act from the Indians without charge to the patentees, except what was necessary to pay office fees.

4. **Indians** ⬦11—**Disposition without fees of lands is not prejudicial, where United States is responsible for agreed price.**

The Chippewa Indians are not injured by the disposition of lands, ceded by them to the United States, under homestead patents, without charge to the patentees, as permitted by Act May 17, 1900, since that act requires the United States to pay into the trust fund created by the act under which the lands were ceded to the United States a sum of money equivalent to that which would have been received if the lands had been sold at the price stated.

5. **Indians** ⬦11—**Do not acquire vested rights in method of disposal of lands ceded to United States.**

The Chippewa Indians did not acquire vested rights in the method of disposal of lands ceded by them to the United States prescribed by Act Jan. 14, 1889, under which the lands were ceded, but Congress had power to change the method of distribution of the funds realized from the sale of the lands, and also to change the method of disposing of the timber thereon.

6. **United States** ⬦125—**Suit to restrain Secretary from disposing of timber as directed by act of Congress is against United States.**

A suit brought against the Secretary of the Interior, seeking to have so much of Act June 27, 1902, and Act May 23, 1908, as directs the sale of Indian lands in a manner different from that provided for in the act under which the lands were ceded to the United States declared unconstitutional, and the disposal of the lands under those acts restrained, was

───────────

⬦For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

in effect a suit against the United States to control the disposition of the lands by it, and cannot be maintained, since the United States has not given its consent to be sued.

7. **Indians ⊜⟾27(5)—Plaintiff held not entitled to ask for relief for band of which he was not member.**

In a suit by a Chippewa Indian, on behalf of himself and of others similarly situated, plaintiff is not entitled to ask for relief on behalf of a band of Indians of which he was not a member, and for which he had no authority to speak, especially where that band was represented by an attorney and opposed the granting of the relief sought by plaintiff.

8. **Indians ⊜⟾27(5)—Whether fund was erroneously credited to another band cannot be determined, in absence of other band as a party.**

In a suit by a Chippewa Indian against the Secretary of the Interior, it cannot be determined whether receipts from the sale of timber were erroneously credited to a certain band of Indians, instead of to the Indians of the state, where the band receiving the credit was not made a party.

9. **Indians ⊜⟾27(5)—Contract with schools cannot be restrained, in absence of schools as parties.**

A Chippewa Indian cannot have the Secretary of the Interior restrained from making contracts for education of Indians, to be paid for from a trust fund derived from the sale of Indian lands, a portion of which was set aside for educational purposes, where the schools with which the contracts were made were not parties to the suit.

10. **Indians ⊜⟾4—Withdrawals from trust fund for support of agencies held proper.**

Act March 3, 1921, and Act May 24, 1922, providing for the withdrawal of money from a trust fund for the benefit of Chippewa Indians, to be used in promoting civilization and self-support among the Indians in connection with certain Indian agencies, was a proper act of the government as their guardian, since the agencies existed for the benefit of the Indians.

11. **Indians ⊜⟾4—Congress can authorize President to remove Indian agency.**

Congress had power to authorize the President to determine where an Indian agency should be located, as granted by Rev. St. § 2059 (Comp. St. § 4003), so that the removal of an agency under the authority of that section cannot be restrained.

12. **Indians ⊜⟾11—Act under which lands are conveyed to government is not a contract.**

Act Jan. 14, 1889, under which the Chippewa Indians of Minnesota ceded their reservation lands to the government, to be disposed of in the manner prescribed by that act, did not constitute a contract between the Indians and the government, nor deprive Congress, as the guardian of the tribal Indians, of its authority to change its methods of handling their funds.

Appeal from the Supreme Court of the District of Columbia.

Bill by John G. Morrison, Jr., and others, against Albert Bacon Fall, Secretary of the Interior, and others. From a decree dismissing the bill on motion, plaintiffs appeal. Affirmed.

Webster Ballinger, of Washington, D. C., for appellants.

C. E. Wright, Peyton Gordon, and E. S. Booth, all of Washington, D. C., for appellees.

Before SMYTH, Chief Justice, ROBB, Associate Justice, and BARBER, Judge of the United States Court of Customs Appeals.

SMYTH, Chief Justice. John G. Morrison, Jr., describing himself as a member of that class of persons called "all the Chippewa Indians

in the state of Minnesota," filed a bill in the Supreme Court of the District of Columbia, in behalf of himself and all other persons similarly situated, in which he asked for various kinds of relief against the Secretary of the Interior, the Commissioner of the General Land Office, the Commissioner of Indian Affairs, and the Secretary of the Treasury, concerning many subjects mentioned in the bill. The defendants moved to dismiss the bill on several grounds. The motion was sustained, and a decree dismissing the bill, the plaintiff having declined to amend, was entered. The bill is voluminous, and we will give only so much of it as is necessary to illustrate the points raised.

Under an act approved January 14, 1889 (25 Stat. 642), the different bands of Chippewa Indians of Minnesota ceded to the government their title in all their lands constituting their reservations in that state, except a small portion belonging to the White Earth and Red Lake bands. The lands were to be surveyed and classified into pine and agricultural lands, and were to be sold at a price not less than that fixed in the act, the proceeds to be deposited in the Treasury of the United States to the credit of the Chippewa Indians of Minnesota, to draw interest at the rate of 5 per cent. per annum for the period of 50 years. Part of the interest was to be paid annually in cash to heads of families and orphans for their use, part to other classes of Indians, and the remainder, one-quarter, to be devoted exclusively, under the direction of the Secretary of the Interior, to the establishment and maintenance of free schools for the Indians. At the end of 50 years the permanent fund was to be divided and paid to the Indians in equal shares.

[1, 2] The first specific charge of misconduct upon the part of any of the defendants is that the Secretary of the Interior and the Commissioner of the General Land Office illegally caused about 900,000 acres of the ceded lands to be classified as swamp and overflowed lands, and issued patents to the state of Minnesota covering approximately 600,-000 acres of those lands, without consideration to the Indians, and it is averred that, unless restrained, they will issue patents to the remaining lands so illegally classified. It is stated in the brief of the appellees, and not denied by the appellant, that the Secretary of the Interior in 1913 ordered that no more patents issue for these lands, and that none has issued since that time. Therefore there is no cause for relief on that account. With respect to the 600,000 acres which it is said have been patented to the state of Minnesota, it is manifest that we have no power to pass upon the legality of that act in the absence of the state of Minnesota, which is not a party to the suit.

[3, 4] It is next complained that Congress by an act approved May 17, 1900 (31 Stat. 179), provided for homestead patents for agricultural public lands acquired prior to the passage of the act, by treaty or agreement, from the various Indian tribes, including the Chippewas, without charge to the patentees, except what was necessary to pay office fees; that none of the lands acquired from the Chippewa Indians were public lands within the meaning of the act, and that notwithstanding this several thousand patents had been issued for the ceded lands without payment therefor being made into the trust fund, as required by the act of 1889. We think the lands acquired from the Chippewa

Indians under the act are public lands, within the meaning of the act of 1900. The legal title to them is in the United States, and it has a right to dispose of them. By their disposition in the way provided for in the last-mentioned act the trust fund of the Indians does not suffer, for the act declares that the United States shall pay into the fund a sum of money equivalent to that which it would have received if the land had been sold at the price stated in the act of 1889. Thus the government becomes responsible for the price of the land, as it is responsible for the trust fund.

[5] It is argued, however, that the act of 1900 is invalid, since it worked a change in the method of disposing of the lands provided for in the act of 1889. This might be true if Morrison and those for whom he assumes to speak acquired any vested rights in the method. But they did not. A similar question was presented to the Supreme Court of the United States in Gritts v. Fisher, 224 U. S. 640, 648, 32 Sup. Ct. 580, 56 L. Ed. 928. The act of July 1, 1902 (32 Stat. 716), provided that certain tribal Indians and children of the tribe before a certain date should be participants in the distribution of lands of the tribe to which they belonged. A later act cut down the amount which they would have received under the first act, by providing for the admission of children born at a later date to participation in the distribution, and it was argued that Congress did not have the power to do this. Speaking of the rights of the plaintiffs under the first act the court said that it—

"did not confer upon them any vested right such as would disable Congress from thereafter making provision for admitting newly born members of the tribe to the allotment and distribution. The difficulty with the appellants' contention is that it treats the act of 1902 as a contract, when 'it is only an act of Congress and can have no greater effect.' * * * It was but an exertion of the administrative control of the government over the tribal property of tribal Indians, and was subject to change by Congress at any time before it was carried into effect and while the tribal relations continued."

In support of its conclusion the court cites Stephens v. Cherokee Nation, 174 U. S. 445, 488, 19 Sup. Ct. 722, 43 L. Ed. 1041, Cherokee Nation v. Hitchcock, 187 U. S. 294, 23 Sup. Ct. 115, 47 L. Ed. 183, Wallace v. Adams, 204 U. S. 415, 423, 27 Sup. Ct. 363, 51 L. Ed. 547, and Cherokee Intermarriage Cases, 203 U. S. 76, 93, 27 Sup. Ct. 29, 51 L. Ed. 96. See also Brader v. James, 246 U. S. 88, 94, 38 Sup. Ct. 285, 62 L. Ed. 591. This demonstrates that the act of 1900 is valid.

[6] The bill calls attention to the fact that under the act of 1889 the timber on pine lands was to be appraised at not less than $3 per thousand feet, and the land and standing timber thereon were to be sold at public auction, in no event for less than their appraised value; that this method was changed by the act of June 27, 1902 (32 Stat. 400); and that under the act of May 23, 1908 (35 Stat. 272), 400,000 acres of the best pine lands were included in the Minnesota Forest Reserve. Plaintiff asks that so much of the acts of June 27, 1902, and May 23, 1908, as directs the sale of the lands in a manner different from that provided for in the act of 1889, be declared unconstitutional. For the reason given in the Gritts Case, and the other cases just cited, the request must be denied. In addition, it should be observed that the

validity of the act of June 27, 1902, was under consideration by the Supreme Court of the United States in Naganab v. Hitchcock, 202 U. S. 473, 26 Sup. Ct. 667, 50 L. Ed. 1113, wherein it was said that it was apparent that the suit, while in form against the Secretary of the Interior, was in effect against the United States, to control the disposition of the lands and for an accounting of the proceeds of the sales thereof, and for that reason it could not be maintained, the United States not having given its consent to be sued. It is true that in that suit there was present the element of accounting, but we do not think that makes any difference in view of the court's reasoning.

[7] Morrison avers at length that a large number of Chippewa Indians, members of the Red Lake band, have been deprived of certain rights through the action of the defendants. But he, according to the bill, is not a member of the Red Lake band, and he has shown no authority to speak for them. At the bar it was stated by counsel for defendants, and not denied by his opponent, that the Red Lake band did not desire the relief which Morrison sought for them, and that they were at that time represented in court, though not on the record, by an attorney, for the purpose of assisting defendants in the position which they were defending. In view of this, we do not think that Morrison has any standing to insist that the Red Lake band shall have something which they do not want.

[8] In one part of the bill it is charged that some $500,000 derived from timber cut on the Red Lake Indian forest were deposited in the Treasury of the United States to the credit of the Red Lake band, and not to the credit of the Chippewa Indians in Minnesota, as provided in the agreement of 1889. If so, the credit cannot be changed in a suit of this kind, to which the Red Lake band are not parties.

[9] An attack is leveled against certain contracts which the Secretary of the Interior has made with mission boarding schools for the education of Indian children, and which call for the disbursement of money to pay for the tuition and maintenance of the children out of the trust fund, and Morrison asks that the Secretary and the Commissioner of Indian Affairs be enjoined from approving any warrant drawn for the purpose of discharging the obligations imposed by these contracts, and that they be restrained from entering into any like contracts in the future. He also asks for similar relief with respect to contracts made by the same officials with the public school authorities of Minnesota for the education of Indian children. Neither those who represent the mission nor the public schools are before the court, and we have no power to determine their rights without according them a hearing. Moreover, the act of 1889 specifically enjoins upon the Secretary of the Interior the duty of spending a certain part of the interest derived from the fund for the establishment and maintenance of a system of free schools for the children.

[10] Congress by the acts of March 3, 1921 (41 Stat. 1236), and May 24, 1922 (42 Stat. 569), made certain provisions for the withdrawal of money from the trust fund to be used for promoting civilization and self-support among the Indians in connection with certain Indian agencies. The Commissioner of Indian Affairs directed the removal of the agency at White Earth to the town of Cass Lake, Minn. It is

urged that the acts of Congress are void, and that the removal of the agency was without authority. In Lane v. Morrison, 246 U. S. 214, 38 Sup. Ct. 252, 62 L. Ed. 674, the court approved an appropriation made for just such purposes out of the trust fund. It is said by counsel for Morrison that the only question involved in that case was whether or not the joint resolution there considered made the appropriation, and that there was no contention as to the power of Congress in the matter. That is true. It seems that all parties, including the court, regarded the resolution as a valid exertion of congressional authority. The court points out that Congress had been accustomed to make such appropriations for many years subsequent to the act of 1889 creating the trust fund, and implicitly treats the appropriation as valid. The agencies exist for the benefit of the Indians, and it was proper that the government, their guardian, in the administration of the trust fund, should pay the expense of maintaining them.

[11] The agency was removed from White Earth to Cass Lake by the President, acting through the Commissioner, under authority of section 2059, R. S. (Comp. St. § 4003). That Congress had the power to authorize the President to determine where an Indian agency should be located must be conceded. Authorities for such a proposition are not necessary.

[12] The bill proceeds upon the premise that the act of 1889, under which the lands were conveyed to the government for certain purposes, constituted a contract between the Indians and the government, whereby the former acquired a vested right in the methods of handling the trust provided in the act. If this were true, and the proper parties were before the court, a conclusion different from that which we have reached might be necessary, but according to the Gritts and other decisions which we have referred to it is not. The act is not a contract. Congress, as the guardian of the tribal Indians, may change its methods of handling their funds whenever, in its judgment, the welfare of the Indians requires that it should be done.

Having examined all the points raised by the bill, and being satisfied that no error was committed by the trial court, we affirm its decree, with costs.

Affirmed.

Appeal to the Supreme Court of the United States allowed June 19, 1923.