MORRISON, JR., ET AL. *v.* WORK, SECRETARY OF THE INTERIOR, ET AL.

APPEAL FROM THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.

No. 112. Argued October 24, 1924.—Decided January 5, 1925.

1. A suit to enjoin the Secretary of the Interior and other executive officers from carrying out acts of Congress upon the ground that they unconstitutionally deprive the plaintiff and the other members of an Indian tribe of property held 'for them as individuals by the United States, can not be entertained in the face of a substantial defense that the property is in truth tribal property subject to control by the United States as guardian of Indians, since for the adjudication of this issue the United States is an indispensable party, and it cannot be sued without consent of Congress. P. 485.
2. Under Act of January 14, 1889, and by agreement with the Chippewa Indians of Minnesota, reservation land was ceded to

the United States, which undertook to sell it, deposit the proceeds in the Treasury to the credit of those Indians, pay interest, in specified ways, to them and on their behalf and ultimately divide the principal among the Indians then entitled. *Held,* that one of the Indians has no standing to maintain a class suit to restrain executive officials from alleged excess of their powers in disposing of the funds and interest, since the trust is the obligation of the United States, and the right of the Indians is merely to have the United States administer it properly. P. 486.

3. Courts have no power under such circumstances to interfere with the performance of the functions committed to an executive department of the Government, by a suit to which the United States is not, and cannot be made, a party. *Id.*

4. A mandatory injunction is granted, not as a matter of right, but in the exercise of a sound legal discretion. P. 490.

53 App. D. C. 331; 290 Fed. 306, affirmed.

APPEAL from a decree of the Court of Appeals of the District of Columbia, affirming a decree of the Supreme Court of the District which granted a motion to dismiss appellant's amended bill for an injunction.

*Mr. Webster Ballinger,* with whom *Mr. Edward L. Rogers* and *Mr. Frank D. Beaulieu* were on the brief, for appellants.

*Mr. Harry L. Underwood,* Special Assistant to the Attorney General, with whom *Mr. Solicitor General Beck* and *Mr. Assistant Attorney General Wells* were on the brief, for appellees.

MR. JUSTICE BRANDEIS delivered the opinion of the Court.

By the Act of January 14, 1889, c. 24, 25 Stat. 642, and agreements made pursuant thereto approved by the President March 4, 1890, the Chippewa Indians of Minnesota ceded to the United States their title to all lands constituting their reservations in that State, except a

small portion of the White Earth and Red Lake Reservations.[1]   The ceded lands were to be surveyed and classified into pine and agricultural lands, and were to be sold at a price not less than that fixed by the act; the proceeds were to be deposited in the Treasury of the United States to the credit of the Chippewa Indians of Minnesota; and interest thereon was to be paid by the Government at the rate of five per cent.   Part of this interest was to be distributed annually in cash to heads of families and guardians of minor orphans; part thereof to other classes of Indians; and the remainder was to be applied, under the direction of the Secretary of the Interior, for the establishment and maintenance of free schools for the Indians.   At the end of fifty years the so-called permanent fund was to be divided in equal shares and paid to the Indians then entitled thereto. The United States has exercised and is now exercising, in respect to the property dealt with in said act and agreement, the powers of a guardian for these Indians and of a trustee in possession.

This suit was brought in the Supreme Court of the District of Columbia by Morrison, who alleges that he is a member of the class of persons described as " all the Chippewa Indians in the State of Minnesota," and sues on behalf of himself and others similarly situated.   The defendants are the Secretary of the Interior, the Commissioner of the General Land Office, the Commissioner of Indian Affairs and the Secretary of the Treasury.   Relief is sought on eight distinct grounds.   Four of them

[1] The provisions of this act and later legislation were considered in *Minnesota* v. *Hitchcock*, 185 U. S. 373; *Naganab* v. *Hitchcock*, 202 U. S. 473; *Fairbanks* v. *United States*, 223 U. S. 215; *United States* v. *Mille Lac Band of Chippewas*, 229 U. S. 498; *Johnson* v. *Gearlds*, 234 U. S. 422; *La Roque* v. *United States*, 239 U. S. 62; *United States* v. *Waller*, 243 U. S. 452; *Lane* v. *Morrison*, 246 U. S. 214.

rest upon charges that by six later acts [2] Congress under-
took to modify or to ignore rights of the Chippewas
which had become fixed by the agreements approved
March 4, 1890; that by carrying out the provisions of
these later acts the defendants, in their official capacities,
have subjected these Chippewas to great loss, and
threaten further injury; and that each of the six acts
is void, because it deprives them of property in violation
of the Constitution. Three grounds of complaint rest
upon charges that the defendants, acting officially, have,
through mistaken and hence unauthorized exercise of
powers granted by the Act of 1889, inflicted, and threaten,
further injury.[3] The eighth ground of complaint is that
loss has been inflicted and is threatened through failure
to perform duties imposed by that act. The specific
prayers are for an injunction to restrain each of the
threatened wrongs. There is also a prayer for general
relief. The defendants moved to dismiss the bill. The
motions were sustained; and leave was granted to amend.
An amended bill was filed; defendants again moved to
dismiss; a final decree of dismissal was entered by the
trial court; and it was affirmed by the Court of Appeals
of the District. 290 Fed. 306. The case is here on ap-
peal under § 250 of the Judicial Code.

· The objections presented by the motions to dismiss in-
clude lack of jurisdiction of the court over the subject
matter; lack of necessary parties plaintiff and defendant;

---

[2] Act of June 27, 1902, c. 1157, 32 Stat. 400; Feb. 20, 1904, c. 161,
33 Stat. 46; May 23, 1908, c. 193, 35 Stat. 268; May 18, 1916, c.
125, 39 Stat. 123, 137; March 3, 1921, c. 119, 41 Stat. 1225, 1235;
May 24, 1922, c. 199, 42 Stat. 552, 569.

[3] Another ground of complaint relating to action of the Govern-
ment in recognizing the claim of Minnesota under the Swamp Land
grant to a large area of the ceded lands has been withdrawn because
of what is alleged to be a change in the policy of the Secretary of
the Interior as indicated by the commencement of a suit in this
Court.

and lack of merits. Every objection made involves the determination of the nature of the title of the Indians to the property in suit and the nature of the interest of Morrison therein. The differences in character of the three classes of complaint included in the bill require that each class be considered separately. But it is not necessary either to state in detail the facts concerning each of the eight grounds of complaint, or to pass upon their merits.

*First.* The four grounds of complaint which rest upon the charge that the defendants are depriving these Chippewas of their property by carrying out the provisions of the six later acts of Congress, have this in common. Each complaint relates to some change made either in the method of managing and disposing of the ceded lands or in the disposition of the proceeds thereof. As to each, it is claimed that the defendants' acts are unlawful because Congress was powerless to make the change without the consent of the Chippewas. It is admitted that, as regards tribal property subject to the control of the United States as guardian of Indians, Congress may make such changes in the management and disposition as it deems necessary to promote their welfare. The United States is now exercising, under the claim that the property is tribal, the powers of a guardian and of a trustee in possession. Morrison's contention is that, by virtue of the Act of 1889 and the agreements made thereunder, the ceded lands ceased to be tribal property and the rights of the Indians in the lands and in the fund to be formed became fixed as individual property. The Court of Appeals held this contention to be unfounded. We have no occasion to determine whether it erred in so ruling. The claim of the United States is, at least, a substantial one. To interfere with its management and disposition of the lands or the funds by enjoining its officials, would interfere with the performance of governmental functions

and vitally affect interests of the United States. It is, therefore, an indispensable party to this suit.[4] It was not joined as defendant. Nor could it have been, as Congress has not consented that it be sued.[5] The bill, so far as it complains of acts done pursuant to the later legislation, was properly dismissed for this reason, among others.

*Second.* The three grounds of complaint which rest upon charges that the defendants, acting under color of authority granted by the Act of 1889, have inflicted and threaten injury by the exercise of powers not conferred, have this in common. Each complaint involves the charge that the officials have erred either in construing or in applying that act and the agreements approved March 4, 1890. The Court of Appeals held all of these charges to be unfounded. We need not consider the correctness of the rulings. Nor need we consider whether the errors complained of were decisions by a head of an executive department of the Government of the character not subject to judicial review.[6] The bill was properly dismissed, so far as concerns these three charges, because the plaintiff is not in a position to litigate in this proceeding the legality of the acts complained of.

The case at bar is unlike those in which relief by injunction has been granted against the head of an executive department, or other officer, of the Government to enjoin an official act on the ground that it was not within the authority conferred, or that it was an improper exercise of such authority, or that Congress lacked the power to confer the authority exercised. In those cases the act

---

[4] *Naganab* v. *Hitchcock*, 202 U. S. 473; *Louisiana* v. *Garfield*, 211 U. S. 70; *New Mexico* v. *Lane*, 243 U. S. 52. Compare *Goldberg* v. *Daniels*, 231 U. S. 218; *Wells* v. *Roper*, 246 U. S. 335, 337; *Lambert Run Coal Co.* v. *Baltimore & Ohio R. R. Co.*, 258 U. S. 377, 383.

[5] *Turner* v. *United States*, 248 U. S. 354, 359; *United States* v. *Babcock*, 250 U. S. 328, 331. Compare *Minnesota* v. *Hitchcock*, 185 U. S. 373.

[6] *Ness* v. *Fisher*, 223 U. S. 683.

complained of either involved an invasion or denial of a definite right of the plaintiff,[7] or it operated to cast a cloud upon his property.[8] In some of those cases the defendant would have been liable individually in trespass unless he could justify under authority conferred.[9] Morrison and the other Chippewas have no right of that character. The lands ceded are the property of the United States. It has, confessedly, power to dispose of them. It assumed the obligation of doing this properly, of accounting for the principal of the trust fund to be created thereby, and of disbursing properly the interest accruing. Each of these three grounds of complaint involves, in essence, either the charge of failure to pay into the Treasury to the credit of the Chippewas money which should be credited to them or the making of a payment from the accruing interest for a purpose not authorized. If through officials of the United States these lands, or the proceeds

[7] *American School of Magnetic Healing* v. *McAnnulty,* 187 U. S. 94; *Santa Fe Pac. R. R. Co.* v. *Lane,* 244 U. S. 492; *Waite* v. *Macy,* 246 U. S. 606; *Hammer* v. *Dagenhart,* 247 U. S. 251; *First National Bank of Canton* v. *Williams,* 252 U. S. 504; *Fort Smith & Western R. R. Co.* v. *Mills,* 253 U. S. 206; *Street* v. *Lincoln Safe Deposit Co.,* 254 U. S. 88; *Tedrow* v. *Lewis & Son Dry Goods Co.,* 255 U. S. 98; *Kennington* v. *Palmer,* 255 U. S. 100; *Kinnane* v. *Detroit Creamery Co.,* 255 U. S. 102; *Weed & Co.* v. *Lockwood,* 255 U. S. 104; *Willard & Co.* v. *Palmer,* 255 U. S. 106; *International Ry. Co.* v. *Davidson,* 257 U. S. 506; *Hill* v. *Wallace,* 259 U. S. 44; *Lipke* v. *Lederer,* 259 U. S. 557; *Regal Drug Co.* v. *Wardell,* 260 U. S. 386; *Chastleton Corp.* v. *Sinclair,* 264 U. S. 543.

[8] *Noble* v. *Union River Logging R. R. Co.,* 147 U. S. 165; *Lane* v. *Watts,* 234 U. S. 525; *Payne* v. *Central Pac. Ry. Co.,* 255 U. S. 228; *Payne* v. *New Mexico,* 255 U. S. 367; *Santa Fe Pac. R. R. Co.* v. *Fall,* 259 U. S. 197; *Baldwin Co.* v. *Robertson,* 265 U. S. 168.

[9] *Noble* v. *Union River Logging R. R. Co.,* 147 U. S. 165; *Street* v. *Lincoln Safe Deposit Co.,* 254 U. S. 88; *Lipke* v. *Lederer,* 259 U. S. 557; *Regal Drug Co.* v. *Wardell,* 260 U. S. 386. Compare *Philadelphia Co.* v. *Stimson,* 223 U. S. 605, 620; *Greenleaf Lumber Co.* v. *Garrison,* 237 U. S. 251; *Cunningham* v. *Macon & Brunswick R. R. Co.,* 109 U. S. 446, 452.

thereof, or the accruing interest, are improperly disposed of, it is the United States, not the officials, which is under obligation to account to the Indians therefor. In other words, the right of the Indians is merely to have the United States administer properly the trust assumed. It resembles the general right of every citizen to have the Government administered according to law and the public moneys properly applied.[10] Courts have no 'power, under the circumstances here presented, to interfere with the performance of the functions committed to an executive department of the Government by a suit to which the United States is not, and cannot be made, a party.[11]

*Third.* A mandatory injunction is sought to compel the Secretary of the Interior to permit the Red Lake Indians to receive allotments from the Red Lake Reservation, under § 2 of the General Allotment Act of February 8, 1887, c. 119, 24 Stat. 388. The plaintiff does not claim to be entitled to an allotment of any of this land. He is not a Red Lake Indian. He is not seeking to enforce the right of any Red Lake Indian to an allotment. Morrison's interest is an indirect one. His complaint appears to be this:

Approximately 700,000 acres of land were reserved to satisfy claims for allotment to the Red Lake Indians. Under the agreements approved by the President these allotments were to be made as soon as practicable after

---

[10] *Fairchild* v. *Hughes,* 258 U. S. 126; *Massachusetts* v. *Mellon,* 262 U. S. 447, 486. Compare *Louisiana* v. *McAdoo,* 234 U. S. 627.

[11] Among the 59 cases passed upon by this Court in which a suit to enjoin an officer of the United States was entertained but relief was denied, there are two—*Quick Bear* v. *Leupp,* 210 U. S. 50, and *Lane* v. *Morrison,* 246 U. S. 214—in which the plaintiff appears to have had only the same character of interest as is claimed by the plaintiff in the present case. In these cases, relief was denied on the ground that the action complained of was within the scope of the authority conferred, the question of the plaintiff's right to litigate the matter not having been raised.

the taking of a census. The amount of land which will actually be required to satisfy these claims for allotment is far less than the 700,000 acres reserved. The surplus land, when ascertained, will pass to the United States as a part of the ceded lands. This surplus, like the other lands, must be sold; and, when sold, the proceeds must be paid into the trust fund for the benefit of all the Chippewas in Minnesota. If, and as soon as, the trust fund is augmented by the sale of the surplus lands, a part of the interest accruing on the addition so made to the trust fund will be payable to all the Chippewas in Minnesota, including the plaintiff. The prescribed census was completed 32 years before the filing of the bill. No allotments have been made. The delay in making the allotments has postponed the determination of what are surplus lands, and consequently the sale of the same. The delay in making sales has postponed the payment into the trust fund of the expected proceeds from sales. The delay in making this payment has deferred the accruing of interest. Thus the plaintiff and others are deprived of part of their expected annual income. The delay in making the allotment has likewise deferred the commencement of the running of the fifty-year period upon the expiration of which the trust fund is to be distributed. The postponement of the period of distribution results in unnecessary and illegal expenditure out of the income of the fund. It is to avert such indirect losses that a mandatory injunction is sought to compel the Secretary to make the allotments.

Morrison urges that he is seeking to enforce the performance of a merely ministerial duty. Relief was denied by the Court of Appeals on the ground that he is not a member of the Red Lake Band and has shown no authority to speak for them. Whether that ruling was correct, whether the duty of the Secretary of the Interior is merely ministerial, and whether the indirect or remote

interest of the plaintiff in the performance of the particular duty is of a nature which could, in any event, entitle him to compel its specific performance by judicial process—these are questions which we have no occasion to consider. A mandatory injunction, like a mandamus, is an extraordinary remedial process which is granted, not as a matter of right but in the exercise of a sound judicial discretion.[12] It issues to remedy a wrong, not to promote one. No facts are shown which justify its issue in this case. It is alleged that the Secretary of the Interior has " refused and still refuses to allot a single Indian on the Red Lake Reservation lands, or to permit any Indian to select or receive an allotment thereon." If any Indian who is entitled to an allotment has vainly requested that it be made to him, it is not necessary to seek redress indirectly by this proceeding. Under the Act of February 6, 1901, c. 217, 31 Stat. 760, any Indian who claims to be entitled to an allotment under any act of Congress, may bring suit therefor against the United States in the appropriate district court.[13] Moreover, the course pursued by the Secretary of the Interior has been long acquiesced in by the Red Lake Indians and for aught that appears it is in accord with the desires and interest not only of that Band, but also of all the other Chippewas in Minnesota except the plaintiff.

*Affirmed.*

[12] *Duncan Townsite Co.* v. *Lane,* 245 U. S. 308, 311; *Arant* v. *Lane,* 249 U. S. 367, 371.

[13] See *United States* v. *Payne,* 264 U. S. 446.