# SANTA FE PACIFIC RAILROAD COMPANY *v.* LANE, SECRETARY OF THE INTERIOR.

### APPEAL FROM THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.

No. 170.    Argued April 18, 1917.—Decided June 11, 1917.

In view of the power reserved to add to, alter, amend or repeal the act granting land to the Atlantic and Pacific Railroad Company (July 27, 1866, c. 278, 14 Stat. 292), and of the grantee's failure to comply with the conditions as to construction, Congress, without violating any vested right and consistently with the Fifth Amendment, could lay upon the grantee the cost of surveying the lands granted and require payment thereof as a condition to the issuance of patents, as was in fact done, in respect of said company, by the general provision in the Act of July 31, 1876, c. 246, 19 Stat. 121.

The construction placed by the Land Department upon the Act of 1876, *supra*, to the effect that it required the grantee to pay only a share of the cost of surveying and sectionizing a township proportional to the area of its granted lands (odd sections) within that township, was not only reasonable but, being undoubtedly known to Congress, must be deemed to have been approved by and in effect incorporated in the Act of June 25, 1910, c. 406, 36 Stat. 834, which makes no change in the grantee's obligation beyond advancing the time of payment.

This view is corroborated by the Senate and House committee reports preceding and explaining the Act of 1910.

As a demand by the Secretary of the Interior based on the Act of 1910, *supra*, that the railroad grantee make a deposit to cover the entire cost of surveying a township, in which only part of the lands belongs to such grantee, is clearly unwarranted by those acts, its effectuation may be enjoined if the other elements requisite to such relief are present.

The claim evidenced by such a demand casts a serious cloud on the large areas of other unsurveyed land in the railroad grants and therein threatens the grantee with serious embarrassment; and the provision in the Act of 1910 for forfeiture if the demand be not complied with, to be followed by proceedings by the Attorney General, is also to be considered as a reason for equitable relief.

The grantee is not required, in order to test the validity of such a demand, to adopt the hazardous and embarrassing course of ignoring it and defending such suit as the Attorney General may institute under the Act of 1910.

The Secretary of the Interior having demanded under the Act of 1910, *supra,* an amount equal to the entire cost of surveying certain townships of which the railroad grantee could not lay claim to more than half, a tender of one-half the amount demanded was adequate.

43 App. D. C. 497, reversed.

THE case is stated in the opinion.

*Mr. Alexander Britton,* with whom *Mr. Evans Browne* and *Mr. Francis W. Clements* were on the brief, for appellant.

*Mr. Assistant Attorney General Kearful* for appellee.

MR. JUSTICE VAN DEVANTER delivered the opinion of the court.

This is a suit to enjoin the Secretary of the Interior from insisting upon or giving effect to a demand heretofore made by him on the plaintiff to the effect that the latter make an advance deposit, under the Act of June 25, 1910, c. 406, 36 Stat. 834, of $5,500 to cover the cost of surveying certain lands within the primary limits of the land grant made by the Act of July 27, 1866, c. 278, 14 Stat. 292, to the Atlantic and Pacific Railroad Company, to whose rights the plaintiff has succeeded. The court of first instance refused the injunction and dismissed the bill, and its action was affirmed. 43 App. D. C. 497.

The land grant was made in aid of the construction of a proposed railroad from Missouri through Arizona to the Pacific Ocean, and included, subject to exceptions not here material, every alternate odd-numbered section of public land within defined limits on either side of the road.

The lands along the proposed road had not been surveyed at the date of the grant, but the President was to cause them to be surveyed as the construction proceeded; and as each twenty-five miles of road was completed patents were to be issued for the granted lands lying opposite that section. The grant was made upon condition that construction be commenced within two years and that not less than fifty miles of road be completed during each year thereafter; and the granting act was declared to be subject to addition, alteration, amendment or repeal by Congress, due regard being had for the rights of the grantee. Although expressly contemplating that the granted lands should be surveyed along with the other lands on each side of the road, the granting act said nothing about who should bear the cost of the survey. At first the grantee did not proceed with the construction at the rate prescribed (*Atlantic & Pacific R. R. Co. v. Mingus*, 165 U. S. 413, 442; House Report No. 193, 49th Cong., 1st sess.), and during the continuance of this default Congress incorporated in the appropriation act of July 31, 1876, c. 246, 19 Stat. 121, a provision requiring the grantee, as also other similar grantees, to pay for the survey of the granted lands and directing that this be done in advance of the issue of the patents. This provision, it is contended, infringed upon the vested rights of the grantee and therefore was repugnant to the due process of law clause of the Fifth Amendment to the Constitution. But in view of the grantee's default and the reserved power to add to, alter, amend or repeal the granting act, the contention must be held untenable. This necessarily follows from the decisions in *Northern Pacific R. R. Co. v. Traill County*, 115 U. S. 600, and *New Orleans Pacific Ry. Co. v. United States*, 124 U. S. 124.

Under the rectangular system of surveying the public lands, which long has been in force, they are divided into townships and sections bounded by north and south and

east and west lines. A township consists of thirty-six sections—each approximately one mile square—arranged in six rows and progressively numbered by starting with the northeasterly one and proceeding west through the upper row, then east through the second row and then alternately west and east through the others. Rev. Stats., § 2395. A township has the same number of odd-numbered sections that it has of even-numbered ones and the two are so arranged that they alternate just as do the different colored squares on a checker board. The only lines run in the course of the survey are the township lines and the exterior section lines and the only monuments erected or placed are those which mark these lines. Every section line is a boundary between two sections, one having an odd and the other an even number. A township cannot be divided until its exterior lines are established, and the lines of the alternate odd-numbered sections cannot be established without at the same time and by the same acts establishing the lines of the even-numbered sections. In short, the system is such that a township is surveyed as a unit.

With this surveying system in mind, the officers of the Land Department construed the provision of 1876 as intended to charge the grantee with the cost of surveying the granted lands, and not with the cost of surveying the township. A plan for dividing the cost on an acreage basis between the granted and the ungranted lands was accordingly adopted. By it, if the granted lands constituted half the total area, as they would where all the odd-numbered sections passed under the grant, the grantee was charged with half the total cost. This plan was followed uniformly as to all the land grants coming within the purview of that provision up to the passage of the Act of June 25, 1910, *supra*. Of the terms of this act it suffices to say in this connection that it requires the cost of surveying the "lands granted" to be deposited within ninety

days after a demand by the Secretary of the Interior specifying the amount required and the lands to be surveyed. It makes no other change in the duty or obligation of the grantee. In other words, what is to be paid remains the same as before, but the time for payment is advanced. Following this act the officers of the Land Department adhered to the view that the cost to be paid was that of surveying the granted lands and continued to divide the cost of surveying the township according to the plan previously adopted, save as a different course was pursued in this and possibly a few other instances.

The demand by the Secretary out of which this suit arose relates to the survey of four townships in Arizona the odd-numbered sections of which are claimed by the plaintiff under the grant of 1866. The amount specified in the demand is the estimated cost of surveying these townships and not a proportional part of the total cost corresponding to the acreage of the granted lands. The townships lie opposite the constructed portion of the road and, speaking generally, the plaintiff's right to the odd-numbered sections is not questioned; indeed, it is the basis of the Secretary's demand. The townships also lie within the limits of a forest reserve, but this does not affect the plaintiff's rights under the grant, for the reserve was established long after the road was constructed.

The construction which the officers of the Land Department placed upon the provision of 1876, if not the only permissible one, was obviously both reasonable and equitable. Their uniform adherence to it for over thirty years prior to the Act of 1910 gave it additional force, and when Congress, with undoubted knowledge of what had been done, chose, as it did in passing that act, to leave the terms of the former provision undisturbed, save as the time for payment was advanced, the departmental construction received a further sanction which, in effect, incorporated it into the statute. Convincing evidence

that Congress took the same view of the matter as did the officers of the Land Department, is afforded by the committee reports on the Act of 1910 wherein the grantees in the land grants were spoken of as under an existing duty "to pay *one-half* the cost of surveying the lands within their granted limits" and the Secretary of the Interior was encouraged to call upon Congress "for a sufficient appropriation, from time to time, to cover the Government's *share* of the cost of the work of surveying as it progressed." See Senate Report No. 609, 61st Cong., 2d sess., which includes the House Report. One of the reports, in evident explanation of provisions in the act intended to hasten such surveys, said:

"It is deemed wise and important that these lands be surveyed as promptly as possible for various reasons— first, that they may become taxable by the States and communities; second, that the Government may dispose of its lands which join the railroad lands, and in order that where the railroad lands occur within forest reserves— about 3,000,000 acres of the unsurveyed lands being in reserves—the government officials may be able to determine the boundaries of the public lands for the purpose of regulating and controlling the same, selling the timber, etc."

We conclude that the provision of 1876, as supplemented by the Act of 1910, gives no warrant for demanding of the grantee in a land grant a deposit covering the entire cost of surveying a township wherein the grantee is entitled to only a part of the lands, and that in making such a demand of the plaintiff the defendant plainly exceeded his authority. Thus, the demand was an unauthorized act done under color of office, and the defendant properly may be enjoined from insisting upon or giving effect to it, unless it be that there is an absence of other elements essential to granting such relief.

We think the other elements are not wanting. There

are millions of acres of unsurveyed lands within the primary limits of the unforfeited portion of the grant of 1866. (See Senate Report, *supra.*) The plaintiff is entitled to many of the odd-numbered sections within the unsurveyed areas. A claim such as is evidenced by the demand made by the defendant, unless and until it is adjudged unauthorized, will cast a serious cloud upon the plaintiff's rights in the granted lands remaining unsurveyed and be a source of serious embarrassment. Besides, the Act of 1910 contemplates that when a demand thereunder is not complied with the rights of the grantee in the granted lands specified in the demand "shall cease and forfeit" to the United States and the Secretary shall notify the Attorney General in order that the latter may begin "proceedings to declare the forfeiture" and to restore the lands to the public domain. The plaintiff was not required in order to test the validity of the demand to permit the ninety days to pass and to rely entirely upon defending such suit as might be brought by the Attorney General. On the contrary, if the demand was unlawful, as we hold it was, the plaintiff was entitled to sue in equity to have the defendant enjoined from insisting upon or giving any effect to it. The hazard and embarrassment incident to any other course were such as to entitle it to act promptly and affirmatively, and of course there was no remedy at law that would be as plain, adequate and complete as a suit such as this against the defendant.

The plaintiff promptly tendered a deposit of half the amount demanded, but the tender was rejected. As the granted lands could not at most be more than half the acreage in the townships and the amount demanded was what was required to survey the entire acreage, the tender was adequate.

*Decree reversed.*