### MARSHALL v. CROTTY et al.
No. 4508.

United States Court of Appeals First Circuit.

Nov. 28, 1950.

Rehearing Denied Jan. 3, 1951.

---

Francis W. Marshall, pro se.

Eugene T. Maher, Atty., Department of Justice, Washington, D. C. (H. G. Morison, Asst. Atty. Gen., George F. Garrity, U. S. Atty., Boston, Mass., Edward H. Hickey, Atty., Department of Justice, Washington, D. C., and Harry Bergson, Jr., Asst. U. S. Atty., Boston, Mass., with him on the brief), for appellees.

Before MAGRUDER, Chief Judge, WOODBURY, Circuit Judge, and SWEENEY, District Judge.

MAGRUDER, Chief Judge.

The appeal here is from a judgment dismissing a complaint and a supplementary complaint for lack of jurisdictional amount. Plaintiff claims to have been wrongfully discharged from a government job in violation of his veteran's preference. We affirm the judgment, though on a different ground.

Francis W. Marshall, plaintiff-appellant, is a veteran who served in the Armed Forces of the United States in World War I. On September 24, 1945, he was appointed to the position of Adjudicator, P-2, in the United States Veterans Administration, and assigned to duty in the Regional Office in Boston, Massachusetts. This was a so-called war-service appointment, made under the provisions of the Emergency War Service Regulations of the Civil Service Commission, 5 C.F.R. § 18.1 et seq. (Cum. Supp.), and was limited in tenure to the period of the war and not to exceed six months thereafter. Marshall was promoted to the position and grade of Adjudicator, P-3, on January 8, 1946, and continued in that position and grade as a war-service indefinite appointee, with an efficiency rating of better than "Good". On February 25, 1948, plaintiff received a notice signed by William J. Blake, Manager of the Boston Regional Office of the Veterans Administration, stating that since budgetary limitations necessitated a reduction in force, "your active service must be termi-

nated at the close of business on March 26, 1948." The notice further stated that such separation from the service was being effected in accordance with Civil Service regulations governing reduction in force, this reference being to "Retention Preference Regulations for Use in Reductions in Force" now found in 5 C.F.R. § 20.1 et seq. (1949 ed.).[1] Marshall was also informed that if he felt himself aggrieved, he had a right to appeal in writing to the Director, First U. S. Civil Service Region, Boston, Mass.

After unsuccessful efforts to obtain administrative relief, plaintiff filed his complaint in the court below on March 22, 1948. Named as defendants were Francis W. Crotty, Personnel Officer in the Boston Regional Office of the Veterans Administration, and William A. Foley, Director of the First U. S. Civil Service Region. An application in the complaint for a temporary restraining order was denied. The main prayer was that the court should "grant unto this complainant a Declaratory Judgment that the Civil Service Regulation by which he is being discharged be declared null and void as applied to him and

not in accordance with the provisions of U. S. Code Title 5 Sec. 861 [§ 12 of the Veterans' Preference Act of 1944, 58 Stat. 390], and he be restored to his position without loss of pay." In the supplemental complaint filed November 22, 1948, the prayer was again for a declaratory judgment as aforesaid; and further that, after the expiration of thirty days from the date of the said declaratory judgment, if it remained unappealed from and unacted upon, a writ of mandamus be issued requiring defendant Foley to direct that the plaintiff be restored to his position without loss of pay and requiring defendant Crotty to give complainant preference on his retention list for reduction in force over other competing employees under the requirements of the Veterans' Preference Act, 5 U.S.C.A. § 851 et seq.

On various grounds, defendants moved for dismissal of the complaint or for summary judgment. The district court rested its dismissal solely upon a determination that the matter in controversy did not exceed the value of $3,000, required by 28 U.S.C.A. § 1331.

1. It seems to be clear, and we do not understand that plaintiff contends to the contrary, that plaintiff's discharge was in conformity with the terms of the regulation itself; but plaintiff's contention is that the regulation as here applied is invalid under the applicable statute.

At the date of the plaintiff's discharge, one non-veteran permanent status Adjudicator, P-3, was retained in the Boston Regional Office, and two non-veteran permanent status Adjudicators were transferred to a branch office. The scheme of the Retention Preference Regulations is set forth in an affidavit of defendant Crotty in support of the motion to dismiss or for summary judgment, as follows:

"4. The regulations of the Civil Service Commission establishing the procedures to be followed in a reduction in force provide for the determination of the relative retention preference of employees by their classification according to tenure of employment into competitive retention groups and subgroups. In general, employees with permanent tenure or with appointments unlimited as to time had the highest retention preference and

are accordingly classified in Group A. Employees serving under appointments limited in time to a period in excess of one year or for the period of the war and not to exceed six months thereafter, so-called war-service appointments such as plaintiff's, have the second highest retention preference and are classified in Group B. Each of these groups of employees are further divided into subgroups on the basis of military preference and efficiency ratings. Within each group veterans with an efficiency rating of 'Good'. or better have the highest retention preference and are classified into Subgroup 1.

"5. As a war-service indefinite appointee and a veteran of service in the armed forces in World War I, plaintiff was carried on the retention preference register of the Veterans' Administration Regional Office, Boston, Massachusetts, in Retention Group B, Subgroup B-1. No nonveteran employee in the Boston Regional Office in competition with plaintiff, who did not possess a permanent status appointment was carried in a higher position than plaintiff on the retention preference register for that office."

The matter in controversy is the asserted right of the plaintiff to be retained in employment as Adjudicator, P-3, in the Veterans Administration, in preference to others who were so retained in the Boston Regional Office on and after March 26, 1948, the date of the plaintiff's discharge. What was the value of that right, which plaintiff sought to vindicate by filing the complaint below? Plaintiff was employed at an annual salary of $4,275, in a job of indefinite duration, for the period of the war and not to exceed six months thereafter. On March 26, 1948, though actual hostilities had ceased, our armed forces were still in occupation of enemy countries and the state of war had not formally terminated. The district court concluded that "any right of employment which plaintiff had was not of so definite a character as to substantiate a claim that it was worth $3,000." Its reasoning was as follows: "But this technical duration of the war was subject to termination at any time, and, hence, from the very nature of his appointment, plaintiff could rely on earning little more than six months' salary, or about $2200. But even this was uncertain. Even if we assume that the release of the plaintiff on March 26, 1948 was improper, he would remain at all times subject to termination of his employment by a further reduction in personnel so far-reaching as to justify the release of an employee with preference rights to which plaintiff lays claim. It does not matter that it is now apparent that the war period has not yet ended, or that further reductions in force have not taken place. Nor is it important that if plaintiff were now to be restored after a finding he had been wrongfully discharged, he would be entitled to recover back pay in excess of $3,000. The value of the right to employment of which plaintiff claims to have been illegally deprived must be judged as of the date when the allegedly illegal deprivation took place. Plaintiff has failed to show with any degree of certainty that the value of that right was in excess of $3,000."

We are somewhat in doubt as to the correctness of this ruling by the district court. The value of the right sought to be vindicated must be determined, we suppose, as of the date the complaint was filed. But plaintiff surely has not the burden of establishing to a "certainty" as of that date that had he not, as he asserts, been wrongfully discharged in violation of his statutory veteran's preference, he would have earned in the position in excess of $3,000. Cf. St. Paul Mercury Indemnity Co. v. Red Cab 'Co., 1938, 303 U.S. 283, 289, 58 S.Ct. 586, 82 L.Ed. 845. The most he has to show is that, as of the date of filing suit, that eventuality was more probable than not. A finding of jurisdictional amount is not necessarily precluded by the fact that continuing employment would have been subject to termination on any of various contingencies, some of them not capable of actuarial computation. In Thompson v. Thompson, 1913, 226 U.S. 551, 33 S.Ct. 129, 57 L.Ed. 347, in a suit by a wife for separate maintenance, she had obtained a decree requiring the husband to pay her $75 per month for the maintenance of herself and child. The Court of Appeals for the District of Columbia reversed the decree and remanded the cause with direction to dismiss the bill. 35 App.D.C. 14. The plaintiff thereupon appealed to the Supreme 'Court of the United States, which had jurisdiction only if the matter in dispute exceeded the sum of $5,000. In challenging the jurisdiction, appellee pointed out that the statutory maintenance provided in the decree was subject to judicial modification at any time, or might be cut off entirely, in the event of a change in the circumstances of the parties; and that it would of course wholly cease in the event of the death of the husband. Notwithstanding these contingencies, the Court sustained its jurisdiction of the appeal. See Smith v. Adams, 1889, 130 U.S. 167, 175-76, 9 S.Ct. 566, 32 L.Ed. 895, and cases cited. See also Nord v. Griffin, 7 Cir., 1936, 86 F.2d 481.

As of March 26, 1948, a formal state of peace seemed still far off even though hostilities had ceased two or three years earlier. In view of the international situation then prevailing, there was every likelihood that the period of the technical war would be prolonged at least several months,

so that a person whose tenure of employment was for the period of the war and not to exceed six months thereafter would probably have had an opportunity to earn in excess of $3,000 at the stated annual salary. It is true there was also a contingency of a subsequent reduction in personnel so extensive in character "as to justify the release of an employee with preference rights to which the plaintiff lays claim." But here again, was there a *probability* of another far-reaching reduction in the personnel of the Veterans Administration, in view of the vast and expanding administrative tasks confided to that agency under apparently settled policies established by congressional legislation? And while the determination of the value of the right in controversy might have required a forecast of probabilities if the court had made its finding at an earlier date, here the district court decided the matter on January 9, 1950, over twenty-one months after the complaint was filed. What was formerly a matter of some speculation as to probabilities had then ceased to be a matter of doubt. The war period had been prolonged, and there had been no further reductions in force. We are by no means sure that the court was obliged to ignore altogether the confirmatory evidence of subsequent events in estimating the probable value of plaintiff's asserted right at the time the complaint was filed.

Because of our doubts on the above matter, we prefer to put our affirmance on another ground, which did not appeal to the court below, but which seems to us adequate to sustain the judgment of dismissal.

As above stated, plaintiff asked primarily for a declaratory judgment that he was entitled to reinstatement in his government post by force of § 12 of the Veterans' Preference Act of 1944; and in a supplementary complaint he asked for a writ of mandamus against the defendants in case he was not reinstated within thirty days after the issuance of such declaratory judgment. But if the court below lacked jurisdiction to entertain a direct proceeding for relief in the nature of mandamus, this jurisdictional lack could not be surmounted by the device of filing a complaint under 28 U.S.C.A. § 2201 for a declaratory judgment, with a prayer for further relief by way of mandamus under § 2202 to compel the defendant to take action in accordance with the declaration. In this connection we refer to the statement in Putnam v. Ickes, 1935, 64 App.D.C. 339, 78 F.2d 223, 226: "We think it is clear from any reasonable construction of the acts that the Declaratory Judgment Act has not given the courts jurisdiction over any controversy that would not be within their jurisdiction if affirmative relief were being sought. The act merely declares that a court of the United States has power 'in cases of actual controversy * * * to declare rights and other legal relations of any interested party petitioning for such declaration, whether or not further relief is or could be prayed.' (28 U.S.C.A. § 400.) It clearly follows, we think, that in any actual controversy wherein the court otherwise has jurisdiction of the subject-matter and the parties the court has power to determine the rights of the petitioner, although the case may not have developed to a point wherein affirmative relief could be given. That is as far as the act goes. The right of the court to assume jurisdiction is to be determined by the principles laid down in the Judicial Code. The Declaratory Act is in no respect amendatory of the Judicial Code either directly or by implication. If Congress had intended by this act to extend the jurisdiction of the courts in cases arising under it, it would have so stated in the act, and, in the absence of such statement or language clearly implying such intent, the act must be limited to the jurisdiction expressed therein." See also the discussion by Vinson, Associate Justice, in Doehler Metal Furniture Co. v. Warren, 1942, 76 U.S.App.D.C. 60, 129 F.2d 43, 45.

█ It is clear that the district court does not have general original jurisdiction in cases of mandamus. For a long time it has been held that proceedings in mandamus are not to be deemed "suits of a civil nature, at common law or in equity,"

within the meaning of the jurisdictional statute. McIntire v. Wood, 1813, 7 Cranch 504, 3 L.Ed. 420; McClung v. Silliman, 1821, 6 Wheat. 598, 5 L.Ed. 340; Bath County v. Amy, 1871, 13 Wall. 244, 248, 20 L.Ed. 539; Rosenbaum v. Bauer, 1887, 120 U.S. 450, 7 S.Ct. 633, 30 L.Ed. 743, affirming Rosenbaum v. Board of Supervisors, C.C.D.Cal.1886, 28 F. 223. Perhaps this holding may seem to be an outworn technicality. See the dissenting opinion by Mr. Justice Bradley in Rosenbaum v. Bauer, supra, 120 U.S. at page 459–464, 7 S.Ct. at pages 637–640, 30 L.Ed. 743. But the point came before the Supreme Court again in Knapp v. Lake Shore Ry. Co., 1905, 197 U.S. 536, 25 S.Ct. 538, 539, 49 L.Ed. 870, after the jurisdictional statute had been amended by the Act of March 3, 1887, 24 Stat. 552, by raising the jurisdictional amount, though retaining the language "all suits of a civil nature, at common law or in equity". The Court was asked to reconsider its earlier ruling, but it concluded rather summarily that the Act of 1887 had made no change in this respect and that it did not "confer power on the circuit courts to issue mandamus in an original proceeding". That jurisdictional limitation has been accepted as settled in the cases following: Covington and Cincinnati Bridge Co. v. Hager, 1906, 203 U.S. 109, 27 S.Ct. 24, 51 L.Ed. 111; Barber v. Hetfield, 9 Cir., 1925, 4 F.2d 245; de la Torre v. Fulton, 1 Cir., 1928, 28 F.2d 1020; Ballf v. Kranz, 9 Cir., 1936, 82 F.2d 315, certiorari denied, 1936, 299 U.S. 549, 621, 57 S.Ct. 12, 81 L. Ed. 404; Youngblood v. United States, 6 Cir., 1944, 141 F.2d 912; United States ex rel. Vassel v. Durning, 2 Cir., 1945, 152 F. 2d 455; Insular Police Commission v. Lopez, 1 Cir., 1947, 160 F.2d 673, certiorari denied, 1947, 331 U.S. 855, 67 S.Ct. 1743, 91 L.Ed. 1863; Petrowski v. Nutt, 9 Cir., 1947, 161 F.2d 938.[2] It is true that in the 1948 revision of the Judicial Code, 28 U.S. C.A. § 1331, the phrase "all civil actions" has been substituted for the earlier language, "all suits of a civil nature, at common law or in equity". But the legislative history does not indicate that Congress thereby intended to enlarge the jurisdiction of the district courts so as to vest in them general original jurisdiction in cases of mandamus. The reviser's notes make the explanation that the change was merely "to conform with Rule 2 of the Federal Rules of Civil Procedure [28 U.S.C.A.]." Rule 1 having stated that the rules "govern the procedure in the district courts of the United States in all suits of a civil nature whether cognizable as cases at law or in equity," Rule 2 provides that there shall be one form of action to be known as "civil action". Since the 1948 revision, the courts have adhered to the view that Congress has not vested in the district courts original jurisdiction in cases of mandamus, without any suggestion that the revised jurisdictional phraseology wrought any change. Howell v. Brown, D.C.D.Neb. 1949, 85 F.Supp. 537; McCarthy v. Watt, D.C.D.Mass.1950, 89 F.Supp. 841; Breiner v. Kniskern, D.C.E.D.Pa.1950, 90 F. Supp. 9. So far as we can find, the point has not been passed upon in an appellate court since the 1948 revision.

If the relief here were confined to a declaratory judgment in the terms requested, the judgment would be futile and ineffective. A declaratory judgment does not command action, and here, indeed, coercive process in the nature of mandamus would not be within the power of the district court. In some cases the declaratory judgment, without more, is not a futile thing, because of its effect as *res judicata* in determining the rights of the parties. Thus, if the parties to a contract have an actual controversy as to whether a certain proposed act would be a breach of contract, a declaratory judgment as to the meaning of the contract would be *res judicata* in a subsequent suit for breach of contract based on the doing of the act in question. Likewise, if an insurance company brings a complaint for a declaratory judgment that an insurance policy held by the insured has

2. For the special situation applicable to the District of Columbia, see Kendall v. United States, 1838, 12 Pet. 524, 9 L.Ed. 1181; United States v. Schurz, 1880, 102 U.S. 378, 26 L.Ed. 167; D.C.Code, §§ 11—306, 49—301. See also Petrowski v. Nutt, 9 Cir., 1947, 161 F.2d 938, 939.

been forfeited or lawfully canceled, a declaratory judgment in the matter would be *res judicata* in a subsequent suit by the insured on the policy. But what would the plaintiff in the case at bar gain by a declaratory judgment against these defendants, the Personnel Officer in the Boston Regional Office of the Veterans Administration and the Director of the U.S. First Civil Service Region of the Civil Service Commission? These defendants cannot be ordered to restore the plaintiff to his former position. It does not even appear that the defendant Crotty is the proper officer of the Veterans Administration with delegated authority to hire and fire and reinstate. The notice of discharge of the plaintiff was signed by Crotty's superior, the Director of the Boston Regional Office. A declaratory judgment would not be *res judicata* as against the Director of the Boston Regional Office or as against the Administrator of Veterans Affairs, whose office is in Washington. Nor would a declaratory judgment be *res judicata* as against defendant Foley's superiors, the members of the Civil Service Commission, the validity of whose Retention Preference Regulations the plaintiff is here attacking.

■ Also, we think, a declaratory judgment in the terms requested by the plaintiff would not be *res judicata* as against the United States, in case the plaintiff should subsequently sue for his back pay in the Court of Claims. If a declaratory judgment in the present suit would have such binding effect upon the United States, the conclusion would be inescapable that the suit was in substance one against the United States. But the United States has not consented to be sued in a U. S. district court in this type of case. Cf. Payne v. Fite, 5 Cir.1950, 184 F.2d 977. In Lynch v. United States, 1934, 292 U.S. 571, 582, 54 S.Ct. 840, 845, 78 L.Ed. 1434, the Court said: "When the United States creates rights in individuals against itself, it is under no obligation to provide a remedy through the courts. United States v. Babcock, 250 U.S. 328, 331, 39 S.Ct. 464, 63 L.Ed. 1011. It may limit the individual to administrative remedies. Tutun v. United States, 270 U.S. 568, 576, 46 S.Ct. 425, 70 L.Ed. 738." The Veterans' Preference Act of 1944 contains no provision for judicial enforcement of the rights conferred. The general jurisdictional provision in 28 U.S.C.A. § 1346 vesting original jurisdiction in the district courts, concurrent with the Court of Claims, in certain cases against the United States as defendant, is inapplicable here.

■ For the above reasons we agree with the conclusion of Judge Driver in Palmer v. Walsh, D.C.D.Ore.1948, 78 F. Supp. 64, to the effect that a district court lacking jurisdiction by way of mandamus, is likewise without jurisdiction to give a declaratory judgment determining the reinstatement rights of a former U. S. government employee. See also Branham v. Langley, 4 Cir., 1943, 139 F.2d 115; Kohlman v. Smith, D.C.W.D.Pa.1947, 71 F. Supp. 73, 76; McCarthy v. Watt, D.C.D. Mass.1950, 89 F.Supp. 841; Breiner v. Kniskern, D.C.E.D.Pa.1950, 90 F.Supp. 9.[3]

The judgment of the District Court is affirmed.

3. Even if the court below did have original jurisdiction in cases of mandamus generally, as is true of the U. S. District Court for the District of Columbia (see footnote 2, *supra*), it might still be suggested that a complaint for relief by way of mandamus in a case of the present sort is in substance a suit against the United States, for the object of the suit would be the restoration of the plaintiff to a government job, with an attendant obligation of the United States to pay the salary attached to the job. Since consent of the United States to be sued must be expressly conferred, would general language of a statute conferring jurisdiction on the district courts in cases of mandamus properly be interpreted as including a mandamus suit of this sort, which is in substance a suit against the United States? Cf. Hilton v. Sullivan, 1948, 334 U.S. 323, 68 S.Ct. 1020, 92 L. Ed. 1416, which arose in the U. S. District Court for the District of Columbia. It was there assumed, without discussion, that the district court had jurisdiction to issue a declaratory judgment declaring a veteran's retention rights in government service under the Veterans' Preference Act of 1944.