**ROBERT HAWTHORNE, Inc.**

v.

**UNITED STATES DEPARTMENT OF INTERIOR,** John [Fred] A. Seaton, Secretary of the Department of the Interior and M. O. Anderson, Contract Officer and Superintendent.

**Civ. A. No. 24195.**

United States District Court
E. D. Pennsylvania.

March 28, 1958.

Miller, Adelman & Lavine, Philadelphia, Pa., for plaintiff.

Harold K. Wood, U. S. Atty., Louis C. Bechtle, Asst. U. S. Atty., Philadelphia, Pa., for defendants.

LORD, District Judge.

Plaintiff is a Pennsylvania corporation, specializing in demolition and excavation operations, which bid unsuccessfully on the demolition of a certain building on lower Walnut Street in the City of Philadelphia. The structure in question is to be razed in connection with the development of Independence National Historical Park in Philadelphia.

Defendant, United States Department of the Interior, operates as one of its services the National Park Service. A subdivision of that Park Service is engaged in the development of the Independence National Historical Park, and defendant, M. O. Anderson, is local director of its activities in that connection as Contract Officer and Superintendent. Defendant, "John" A. Seaton is, of course, Fred A. Seaton, Secretary of the Department of the Interior and a member of the Cabinet of the President of the United States.

Invitations to bid on the demolition of the structure in question (Building No. 42 in the project) were issued on January 10, 1958, being accompanied by various conditions and specifications. When the bids were opened by the National Park Service on January 31, 1958, plaintiff's bid of $31,624 was second to the lowest. The successful bidder was Lew Morris Demolition Company, Inc. (hereinafter referred to as "Morris"), with a quotation of $28,446.

Plaintiff contends that the bid of Morris was in fact a conditioned bid, and one which violated the instructions of the invitation to the effect that "bids should not be qualified by exceptions to the bidding conditions." The alleged condition is a phrase in the Morris quotation reading, "The above bid based on using a ball."

The "ball" specification refers to a demolition ball—a heavy metal sphere commonly used in the razing of structures. It is swung, at the end of a cable, from a crane, and crashed against the structure to be demolished.

Plaintiff does not contend that the ball is an unusual instrument for the purpose, but asserts that it can be used only in certain situations without endangering the surrounding buildings. Its position is that, should the defendant supervisor forbid the use of the ball at any time during the destruction of Building No. 42, bidder Morris will be in a position to demand extra compensation for performance of the contract by means other than the ball. Thus, plaintiff asserts, the Morris bid is not in fact the low bid when viewed in the light of its "use of a ball" qualification.

The matter came on for hearing on plaintiff's application for preliminary injunction, which was opposed by a motion to dismiss filed by the United States.

Discussion here will be directed to the following aspects of the case thus raised: I. Jurisdiction of the Subject Matter; II. Jurisdiction of the Parties; and III. Statement of a Claim upon which Relief can be Granted.

I.

Plaintiff contends that injunctive relief may be granted against the Secretary of the Interior, and cites the following cases: Work v. Louisiana, 1925, 269 U.S. 250, 46 S.Ct. 92, 70 L.Ed. 259; Lane v. Watts, 1914, 234 U.S. 525, 34 S.Ct. 965, 58 L.Ed. 1440; Santa Fe Pacific R. R. Co. v. Lane, 1917, 244 U.S. 492, 37 S.Ct. 714, 61 L.Ed. 1275; Chapman v. Santa Fe Pac. R. Co., 1951, 90 U.S.App.D.C. 34, 198 F.2d 498, certiorari denied 1952, 343 U.S. 964, 72 S.Ct. 1058, 96 L.Ed. 1361; and Chapman v. El Paso Natural Gas Co., 92 U.S.App.D.C. 154, 204 F.2d 46.

The first four cases involved officers of the Department of the Interior, such as

the Land Commissioner or Surveyor General, and their acts concerning land tracts granted under special Acts of Congress. Each involved some arbitrary and unauthorized act of the agency which, if permitted, would unsettle established titles to hundreds of thousands of acres of land. The cases are scarcely run of the mill: *e. g.* in the first, the State of Louisiana showed a usurpation of power by the Secretary over titles granted and confirmed to Louisiana as early as 1850. Others involved ancient Mexican land grants, or grants in aid of the first transcontinental railroad—titles which had long since been confirmed by extensive litigation before the United States Supreme Court.

In the last case the Secretary, in the teeth of long standing administrative practice, suddenly sought to impose detailed common carrier regulations on an interstate pipe line which was then in the very process of construction. Mandatory injunction was granted requiring the Secretary to issue the rights of way necessary to permit construction to proceed. In each situation there was a distinct absence of any adequate remedy at law.

Plaintiff points out that those decisions, and its present case, are distinguishable from instances such as the following in which equitable relief was denied: Federal Power Commission v. Metropolitan Edison Co., 1938, 304 U.S. 375, 58 S.Ct. 963, 82 L.Ed. 1408 and Myers v. Bethlehem Shipbuilding Corp., 1938, 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638. In the former, it was held that the Court of Appeals for the Third Circuit, 94 F.2d 943, had erred in restraining Federal Power Commission hearings. In the latter it was decided that the Court of Appeals for the First Circuit, 88 F.2d 154, had erroneously held that a District Court, 15 F.Supp. 915, had jurisdiction to enjoin a National Labor Relations Board hearing.

It is of particular significance that plaintiff's five cases wherein equitable relief against the Secretary of the Interior was granted all came from the courts of the District of Columbia. On the other hand, the two cases in which relief was denied originated elsewhere.

It was clearly more than chance that brought those first cases to the District of Columbia. One may well inquire as to where else a Cabinet Officer could be sued. Again, one may wonder what courts of the United States, other than those of the District of Columbia, have original jurisdiction in mandamus.

■ Considerably deeper than any mere matter of venue is the settled fact of absence of original jurisdiction to grant mandamus, or any relief in the nature of mandamus, in any District Court of the United States outside of the District of Columbia. In Webb v. United States, D.C.E.D.Pa.1957, 21 F.R.D. 251, at page 256, this Court stated:

"As to jurisdiction of the subject matter, it appears that plaintiff really seeks relief in the nature of mandamus. This Court does not ordinarily have jurisdiction to grant mandamus—such writs being beyond the powers of District Courts other than those for the District of Columbia. Marshall v. Crotty, 1 Cir., 1950, 185 F.2d 622; Harris v. Bayer, D.C.E.D.Pa.1955, 18 F.R.D. 392."

Realistic relief would certainly have to go somewhat beyond mere suspension of the demolition contract. Indeed, at argument the plaintiff asked this Court to direct defendants to declare the Morris bid improper. It is evident that a bare injunction against execution of the contract, said to have already been awarded to Morris, would be utterly sterile. In addition, defendants would necessarily be ordered to do something in the plaintiff's interest such as to (1) award the contract to plaintiff instead of Morris; or (2) discard all quotations and initiate another set of invitations to bid.

■ Whatever other alternative there might be, it would seem to require the direction of some affirmative act. Certainly the Court is not expected to direct that work on the Independence National

Historical Park, so far as it relates to Building No. 42, be suspended indefinitely. In that situation of the case, one encounters the rule that, with reference to relief *in the nature of mandamus,* the District Courts of the United States will not do indirectly that which they have no jurisdiction to do directly. Breiner v. Kniskern, D.C.E.D.Pa.1950, 90 F.Supp. 9, 11; Marshall v. Crotty, 1 Cir., 1950, 185 F.2d 622, 627; Harris v. Bayer, D.C.E.D. Pa.1955, 18 F.R.D. 392, 393.

It therefore seems worth mentioning again that the five cases urged by the plaintiff, in which mandamus or mandatory injunction against the Secretary of the Interior was permitted, were without exception causes which arose in the District of Columbia, whose courts are unique in the federal system in that— for historical reasons—they retain original jurisdiction to grant the writ of mandamus. Petrowski v. Nutt, 9 Cir., 1947, 161 F.2d 938, 939.

## II.

The only attempt which plaintiffs have made to secure jurisdiction over the persons of the three named defendants was service on defendant, M. O. Anderson, Contract Officer and Superintendent, at the National Park Service office in the City of Philadelphia.

■ As to the defendant, United States Department of the Interior, it seems clear that it is not a suable entity and has not been brought into the case. The Congress has not constituted that Department a body corporate or authorized it to be sued *eo nomine.* Blackmar v. Guerre, 1952, 342 U.S. 512, 514, 72 S.Ct. 410, 96 L.Ed. 534.

■ Under Federal Rules of Civil Procedure, rule 4(f) and 4(d) (5), 28 U.S.C. it is obvious that defendant, "John" A. Seaton, Secretary of the Department of the Interior, since he has not been served in accordance with the rules, is not before this Court. Noreen v. Van Dyke, D.C.Minn.1955, 133 F.Supp. 142, 144; Webb v. United States, D.C.E.D. Pa.1957, 21 F.R.D. 251, 254; Bessel v. Clyde, D.C.E.D.Pa., 22 F.R.D. 15.

■ Personal service has been made on defendant M. O. Anderson alone. It has not once been alleged that relief is sought against him in his individual capacity. It is nevertheless true that had a showing been made that the agent's conduct was the product of an unconstitutional grant of authority, or an assumption of authority outside of the statutory limitations imposed upon his office, he could have been made personally subject to injunction. Mine Safety Appliances Co. v. Forrestal, 1945, 326 U.S. 371, 374, 66 S.Ct. 219, 90 L.Ed. 140. Even in such circumstances, however, the cases say that a prayer for injunction seeks to enjoin the sovereign through and by means of the local agent. Injunction, however, does not lie against the principal, the United States, in the absence of a grant of permission. Larson v. Domestic & Foreign Corp., 1949, 337 U.S. 682, 687, 69 S.Ct. 1457, 93 L.Ed. 1628.

■ As the present complaint stands, with only the local agent before this Court, it seems bound to fail, if for no other reason than lack of jurisdiction over the person of an indispensable party. It is settled that the person or persons having the ultimate authority to take action are indispensable, and that an action must be dismissed for lack of joinder of such persons. Money v. Wallin, 3 Cir., 1951, 186 F.2d 411, 413; Muerer v. Ryder, D.C.E.D.Pa.1955, 137 F.Supp. 362, 363; Harris v. Bayer, D.C.E.D.Pa.1955, 18 F.R.D. 392, 393.

## III.

On the final consideration as to whether the plaintiff has stated a claim upon which relief can be granted, some questions arise which might just as well have been discussed under jurisdiction. Preliminarily, though, certain of the factual considerations may be noticed.

At the argument it was conceded that use of a demolition ball is standard wrecking practice. Plaintiff did not deny that it would have used the ball, at least to some extent, had it been the successful bidder. Plaintiff merely showed that the ball method is the cheapest of several

customary procedures, and argued that the "use of ball" stipulation qualifies the Morris bid, and takes it out of the terms of the bidding invitation.

On the other hand, the defendant proved that the published specifications required that the successful bidder—whoever he might be—could not proceed with the actual work until he had proposed a detailed plan of operation acceptable to the government superintendent in charge.

Thus, there is at least a question of fact in the case as to whether acceptance of the Morris bid, in the light of all the circumstances, was "a ministerial wrongful act"—as plaintiff has designated it.

Before that question could be approached, however, plaintiff would have to show that some right of its own had been violated. Plaintiff is faced with the well settled proposition that an unsuccessful bidder on a government contract has no standing to complain. Wooldridge Manufacturing Company v. United States, 1956, 98 U.S.App.D.C. 286, 235 F.2d 513, 514; Friend v. Lee, 1955, 95 U.S.App.D.C. 224, 221 F.2d 96, 100; Fulton Iron Co. v. Larson, 1949, 84 U.S.App.D.C. 39, 171 F.2d 994, 997, certiorari denied 1949, 336 U.S. 903, 69 S.Ct. 489, 93 L.Ed. 1068; see Perkins v. Lukens Steel Co., 1940, 310 U.S. 113, 127, 60 S.Ct. 869, 84 L.Ed. 1108.

The foregoing cases point out that regulations as to the letting of government contracts are solely for the benefit of the Government and confer no enforceable rights upon persons dealing with it; that an unsuccessful bidder has no more standing in court than any other member of the public and, as the Larson case held (171 F.2d at page 998):

"* * * it is hornbook law that a mere member of the public cannot be heard to interfere with the processes of executive administration unless his specific, private right has been or is about to be invaded."

The attitude of this Court may be summarized in words written by Judge Clark at page 997 of that same opinion:

"[Plaintiff] in this case has only the status of a disappointed bidder, who bid as close as possible * * * and was outbid by a competitor. Sympathetically as we may view the whole circumstances as affecting [plaintiff], we are still bound to find that [it] must fail for lack of showing of any capacity to sue."

For the foregoing reasons, it is ordered that the defendants' motion to dismiss be and the same is hereby granted, and it is further ordered that the complaint of the plaintiff herein be and the same is hereby dismissed.